1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

11 | THOMAS LAND & DEVELOPMENT, LLC,

Case No.:  18cv1896-LL-AHG

12

Plaintiff,

13

v.

14

15 | VRATSINAS CONSTRUCTION COMPANY, et al.,

16

Defendants.

**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**[ECF No. 57]**

17

18          In its Second Amended Complaint ("SAC"), Plaintiff Thomas Land & Development,

19 LLC ("Plaintiff") brings suit against nine named Defendants: (1) Vratsinas Construction

20 Company ("Vratsinas"); (2) VCC, LLC; (3) VCC Global, LLC; (4) VCC Construction

21 Company; (5) VCC Construction Corporation; (6) VCC Holdco Inc.; (7) VCC Fund, LLC;

22 (8) VCC Group LLC; and (9) Diversified Construction Materials and Services, LLC

23 ("Diversified"). ECF No. 54. Before this Court is a motion to dismiss by all the named

24 Defendants except VCC Holdco Inc., VCC Fund, LLC, and VCC Group LLC (hereinafter

25 "Defendants").[1] ECF No. 57. Defendants argue that all of Plaintiff's claims should be

26 _____

27

28 [1] Neither party addresses whether VCC Holdco Inc., VCC Fund, LLC, and VCC Group LLC are properly named Defendants.

dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), that Plaintiff's Racketeer Influenced and Corrupt Organizations Act ("RICO") claims should be dismissed pursuant to Rule 9(b), and that Plaintiff's negligence claims should be dismissed pursuant to Rule 12(b)(6). For the foregoing reasons, the motion [ECF No. 57] is **GRANTED**.

## I.    BACKGROUND

### A.    Factual Background

According to its SAC, Plaintiff is a real estate development corporation with its principal place of business in Georgia. ECF No. 54 ¶ 4. Vratsinas is a "full-service construction contractor that offers a variety of services including but not limited to pre-construction services, bidding oversight processes, construction and quality management, and general contracting services throughout the United States." *Id.* ¶ 6. Plaintiff alleges the VCC entities named in the SAC are "shells" of Vratsinas. *Id.* ¶ 7. As stated by Plaintiff, Defendant Diversified "purports to be in the business of wholesale door supply and distribution of lumber, plywood, and millwork." *Id.* ¶ 8.

Plaintiff seeks monetary damages arising from Defendants' conduct "on certain private projects on which Plaintiff was the landowner and developer, VCC[2] was the general contractor, and Diversified an intermittent subcontractor[.]" *Id.* ¶ 2. The projects include: (1) The Rim Shopping Center in San Antonio, TX (the "Rim Project"); (2) The Forum on Peachtree Parkway in Peachtree Corners, GA (the "Peachtree Project"); (3) The Forum Carlsbad in Carlsbad, CA (the "Carlsbad Project") (4) The Westside Centre in Huntsville, AL (the "Westside Project"); (5) Prospect Park in Alpharetta, GA (the "Prospect Project"); and (6) The Pavilion at La Quinta in La Quinta, CA (the "La Quinta Project"). *Id.* Plaintiff alleges Defendants engaged in multiple fraudulent schemes related to the projects, including "sham contractor and bid rigging schemes," a "pocket subcontractor kickback scheme," "cost manipulation schemes," and a "fraudulent insurance scheme." *Id.* ¶¶ 14-35.

---

[2] In its SAC, Plaintiff refers to Vratsinas and the VCC Defendants as just "VCC." ECF No. 54 at 2.

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## B.    Procedural Background

On August 13, 2018, Plaintiff filed its initial complaint against Vratsinas, VCC, VCC HoldCo Inc., and VCC Global, as well as individual executives. ECF No. 1. Plaintiff brought claims for: (1) violation of RICO, 18 U.S.C. § 1962(c), against the entity defendants; (2) violation of RICO, 18 U.S.C. § 1962(d), against the entity defendants; (3) violation of the Sherman Antitrust Act, 15 U.S.C. § 1, against the entity defendants; (4) professional negligence against VCC; (5) negligence against all defendants; and (6) intentional misrepresentation against all individual defendants. *Id.* On September 6, 2018, Vratsinas moved to dismiss Plaintiff's claims for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and for failure to state a claim. ECF No. 4. On March 12, 2019, the other named defendants moved to dismiss all of Plaintiff's claims on the same grounds. ECF No. 25.

On August 14, 2019, Judge Battaglia granted in part and denied in part both motions to dismiss. ECF No. 42. Judge Battaglia found Plaintiff failed to adequately allege standing, adequately alleged Sherman Act claims and personal jurisdiction against Vratsinas, but not standard or specific jurisdiction over the other named defendants. *Id.* at 2, 17. Additionally, Judge Battaglia dismissed Plaintiff's RICO and negligence claims. *Id.* at 13, 16.

On August 30, 2019, Plaintiff filed its First Amended Complaint ("FAC") against the same Defendants listed above.[3] ECF No. 44. On September 13, 2019, Vratsinas, VCC, VCC Global, VCC Construction Corporation, and Diversified filed a motion to dismiss. ECF No. 45. On July 7, 2020, Judge Battaglia granted the motion in part and denied it in part. ECF No. 53. Judge Battaglia found Plaintiff had shown personal jurisdiction over the Defendants, and that Plaintiff had again sufficiently alleged a Sherman Act claim. *Id.* at 12-15. Judge Battaglia also found that Plaintiff again failed to show standing, and that Plaintiff failed to sufficiently allege its RICO and negligence claims. *Id.* at 8-11, 15-16.

---

[3] Plaintiff abandoned its claims against the individual defendants.

Judge Battaglia allowed Plaintiff "one additional opportunity to address the deficiencies." *Id.* at 16.

On July 27, 2020, Plaintiff filed its SAC against the above listed Defendants. ECF No. 54. Plaintiff again brings claims for: (1) violation of RICO, 18 U.S.C. § 1962(c), against all Defendants; (2) violation of RICO, 18 U.S.C. § 1962(d), against all Defendants; (3) violation of the Sherman Act, 15 U.S.C. § 1, against all Defendants; (4) professional negligence against VCC; and (5) negligence against VCC. *Id.* On August 8, 2020, Plaintiff filed the instant motion under Rules 9(b), 12(b)(1), and 12(b)(6). ECF No. 57.

On October 1, 2020, Judge Battaglia took the motion under submission without a hearing. ECF No. 66. On October 6, 2020, the case was transferred to Judge Robinson. ECF No. 67. Judge Robinson set a hearing on the motion for January 26, 2022. ECF No. 68. On January 4, 2022, the case was transferred to the below signed district judge. ECF No. 69. The January 26, 2022 hearing was held before the below signed district judge. ECF No. 70.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may seek to dismiss a complaint for lack of jurisdiction over the subject matter. A federal court is one of limited jurisdiction. *See Gould v. Mut. Life Ins. Co. v. New York*, 790 F.2d 769, 774 (9th Cir. 1986). As such, it cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 95 (1998). When considering a Rule 12(b)(1) motion to dismiss, the district court is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). In such circumstances, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Thornhill Publishing Co. v. General Telephone & Electronic Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). Plaintiff, as the party

seeking to invoke jurisdiction, has the burden of establishing that jurisdiction exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The court will presume a lack of jurisdiction until the pleader proves otherwise. *See id.*

Where the defendant's Rule 12(b)(1) motion raises a factual attack on the complaint, a court may consider evidence beyond the complaint. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *Id.* In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint[.]" *Id.*

### B.   Rule 9(b)

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) provides, in pertinent part: 'In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.' The rule 'requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme.'" *Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 624 (9th Cir. 2008) (quoting *Lancaster Cnty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991)).

### C.   Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

18cv1896-LL-AHG

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts [he or she] has not alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

## III. DISCUSSION

### A. Judicial Notice

In conjunction with the instant motion, Defendants request this Court take judicial notice of twenty-six (26) different exhibits. ECF No. 57-5. Exhibits 1, 2, 6, 7, 8, 9, 10, 11, 12, 13, and 18 were previously recognized by Judge Battaglia in ruling on Defendants' motion to dismiss Plaintiff's FAC. ECF No. 53 at 5-6. Plaintiff does not object to this Court taking judicial notice of Exhibits 3, 4, 5, 16, 17, 19, 25, and 26. *See* ECF Nos. 60, 62. Plaintiff objects to this Court taking judicial notice of exhibits 14, 15, 20, 21, 22, 23, and 24[4] on the grounds (1) they are not authenticated, and (2) the truth of the content, and the

---

[4] Exhibit 14 is a "Joint Plan of Reorganization of the Debtors February 15, 2011, filed in the Rim Entities Bankruptcy Proceeding on February 16, 2011." ECF No. 57-5 at 4. Exhibit 15 is a "First Modification before Confirmation to Debtors' Joint Plan of Reorganization Dated February 15, 2011, filed in the Rim Entities Bankruptcy Proceeding on November 17, 2011." *Id*. Exhibit 20 is a "Certificate of Formation of VCC Global, LLC, filed with the Delaware Secretary of State on September 17, 2008." *Id*. Exhibit 21 is a "Certificate of Formation of VCC, LLC, filed with the Delaware Secretary of State on July 11, 2008." *Id*. Exhibit 22 is a "Certificate of Existence with Status of Good Standing for Diversified Construction Materials and Services, LLC, issued by the Nevada Secretary of State on August 7, 2020." *Id*. at 5. Exhibit 23 is a "Certificate of Good Standing for Vratsinas Construction Company." *Id*. Exhibit 24 is a "Certificate of Status for VCC Construction Corp." *Id*.

inferences properly drawn from them, is not a proper subject of judicial notice. ECF No. 62 at 4. For the same reasons stated in Judge Battaglia's previous order, *see* ECF No. 53 at 5-6, and because recognition of these documents is not determinative of this Court's decision on the instant motion, Defendants' request to take judicial notice of these documents is **GRANTED** and Plaintiff's objections are **OVERRULED**.

Plaintiff also objects to and requests to strike three documents attached to the instant motion: (1) the declaration of Bradley Davis, the Secretary and Treasurer of Vratsinas, ECF No. 57-2; (2) a "Management and Leasing Agreement," ECF No. 57-3 (Exhibit A); and (3) a settlement agreement, ECF No. 57-4 (Exhibit B). ECF No. 61. As previously recognized by Judge Battaglia, Defendants factually attack Plaintiff's SAC, specifically, the validity of the assignments upon which Plaintiff relies to show standing. *See* ECF No. 53 at 10 n.1. As noted above, "[i]n resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint[.]" *Safe Air,* 373 F.3d at 1039. Additionally, Plaintiff's argument that "Defendants . . . . do not dispute the truth of Plaintiff's allegations that the assignments actually occurred, but rather that the assignments are insufficient to invoke federal jurisdiction for various reasons," *see* ECF No. 61 at 3, is not accurate. *See* ECF No. 64 at 6 ("[T]he only logical conclusion is that Plaintiff's written assignments were recently created and backdated in an improper attempt to establish Plaintiff's standing."). Accordingly, the declaration, and the attached exhibits, are appropriate subjects for the Court to consider. Plaintiff's objections [ECF No. 61] are therefore **OVERRULED**, and Plaintiff's request to strike them is **DENIED**.

## B. Standing

Plaintiff, as the party invoking federal jurisdiction, is required to establish three elements of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The plaintiff must show an "injury in fact" which is "concrete and particularized" and "actual or imminent." *Id.* at 560. There must be a "causal connection" between the injury and conduct of the defendant. *Id.* Lastly, it must be likely that a verdict for the plaintiff will redress that injury. *Id.* An injury is particularized when it "affect[s] the plaintiff in a

personal and individual way." *Id.* at 560 n.1.

"[I]t is black-letter law that an assignee has the same injury as its assignor for purposes of Article III." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1291 (9th Cir. 2014) (citing *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 286 (2008)); *see also* Fed. R. Civ. P. 17(a) ("An action must be prosecuted in the name of the real party in interest."); Notes of Advisory Committee on 1966 Amendments to Rule 17 ("In its origin the rule concerning the real party in interest was permissive in purpose: it was designed to allow an assignee to sue in his own name."). However, "an assignment cannot create rights in the assignee not held by the assignor." *Misic v. Bldg. Serv. Emps. Health & Welfare Tr.*, 789 F.2d 1374, 1378 n.4 (9th Cir. 1986). "In an action involving an assignment, a court must ensure that the plaintiff-assignee is the real party in interest with regard to the particular claim involved by determining: (1) what has been assigned; and (2) whether a valid assignment has been made." *In re Brooms*, 447 B.R. 258, 265 (9th Cir. 2011), *aff'd*, 520 F. App'x 569 (9th Cir. 2013). Courts may analyze the specific language of assignments to determine standing. *See, e.g.*, *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1130 (C.D. Cal. 2015).

### 1. Plaintiff's Previous Pleadings

In its initial complaint, Plaintiff alleged it was the "duly authorized assignee of any and all existing and potential claims, demands, causes of action, lawsuits, rights of action, expenses, legal fees, and/or damages, of any kind or classification, whether in law, equity or otherwise, alleged herein against the collective named [Defendants] and arising out of the projects identified herein, and all other projects in which any of [the Defendants] were involved." ECF No. 1 at 2 n.1. The projects included the Rim, Peachtree, Carlsbad, and Westside Projects. *Id.* ¶ 2. Judge Battaglia found Plaintiff failed to show standing because:

> Plaintiff fails to name any assignors or the essential terms of any assignments to support [the assignment] allegation. . . . [I]f Plaintiff can establish their role as assignee or as a project owner of one of the listed projects, the "causal connection" between Vratsinas' alleged behaviors and the injuries they would have caused a project owner would not be at issue. However, without more

facts contributing to Plaintiff's role as assignee to those who may have suffered an "injury in fact," or establishing their direct role within the listed projects in which Vratsinas' alleged misconduct occurs, this Court finds that Plaintiff has not adequately pled their standing.

ECF No. 42 at 7-8. In reaching his decision, Judge Battalia relied on *MAO-MSO Recovery II, LLC v. Mercury Gen.*, Case No. CV 17-02525-AB (AJWx), 2017 WL 5086293, at *4 (C.D. Cal. Nov. 2, 2017), in which the court found it was "not obliged to accept as true Plaintiffs' legal conclusions that the assignments exist and are valid; Plaintiffs must allege facts sufficient to support these contentions, such as the identity of the [assignors] whose . . . . rights they claim to own, the dates of the assignments, and the essential terms." Judge Battaglia granted Plaintiff leave to amend to provide more facts regarding "Plaintiff's role as assignee or personal involvement on one of the listed projects to establish the 'causal connection' between Vratsinas' alleged behaviors and themselves for proper standing." ECF No. 42 at 16.

In its FAC, Plaintiff added a fifth project: Prospect Park in Alpharetta, GA ("the Prospect Project"). ECF No. 44 ¶ 2. Plaintiff alleged "[f]or valid consideration, Plaintiff is the assignee and rightful holder of all legal claims, rights and remedies, whether arising in law, equity or otherwise, previously held by the following related real estate developer entities that contracted with VCC for the development of the [projects]." *Id*. ¶ 4. Plaintiff further alleged:

> Plaintiff's principals previously formed each of these developer entities for the limited purpose of assuming operational control over each successive developmental phase of each of the projects. Plaintiff is without limitation the rightful holder of all legal claims, rights and remedies otherwise available to each of these entities arising out of the projects identified herein:

> The Rim Project: Fourth Quarter Properties 140, LLC; Fourth Quarter Properties 161, LP; Fourth Quarter Properties 162, LP; Fourth Quarter Properties LXI, LP; and Fourth Quarter Properties LXV, LP.

> The Peachtree Project: LA Forum Peachtree I, LLC (f/k/a Fourth Quarter Properties XIX, LLC) and LA Forum Peachtree II, LLC

(f/k/a Fourth Quarter Properties 67, LLC).

The Carlsbad Project:  LA Forum Carlsbad, LLC (f/k/a Fourth Quarter Properties XXX, LLC).

The Westside Project: Fourth Quarter Properties XXVII, LLC

The Prospect Project: Fourth Quarter Properties XLVII, LLC

As such, all covenants, duties and obligations owed by Defendants to the developer entities identified above have inured to the benefit of Plaintiff, and all injuries in fact described [in the SAC] have effectually been incurred by Plaintiff.

*Id*. ¶ 4.

Judge Battaglia again found that Plaintiff failed to show standing. ECF No. 53 at 11. Judge Battaglia reasoned:

[W]hile Thomas Land has at the very least pled the assignor entities, Thomas Land's FAC suffers from the same deficiencies that led to the dismissal of its original Complaint. Thomas Land still has not provided sufficient facts for the Court to evaluate the validity of the assignments. . . . Specifically, Thomas Land fails to produce evidence of any contract demonstrating an assignment, any date of the purported assignment, any essential terms of the contract, or any other circumstances surrounding the assignment.

*Id*. (internal citations omitted). Judge Battaglia allowed Plaintiff "one additional opportunity to address the deficiencies." *Id.* at 16.

## 2.    Plaintiff's Current Pleading

In its SAC, Plaintiff again alleges it was the landowner and developer, VCC was the general contractor, and Diversified was an "intermittent subcontractor" on each of the projects. ECF No. 54 ¶ 2. Plaintiff also alleges, again, that it was assigned all claims previously held by multiple "related real estate developer entities" that "contracted with VCC for the development" of the projects. *Id*. ¶ 4. This time, however, Plaintiff adds a sixth project: the Pavilion at La Quinta in La Quinta, CA ("the La Quinta Project"). *Id*. ¶

18cv1896-LL-AHG

2. Additionally, Plaintiff now attaches three exhibits each titled "General Assignment." ECF Nos. 54-1-54-3.

Plaintiff alleges these three exhibits demonstrate that Plaintiff was assigned all claims pertaining to each project, and therefore, Plaintiff is the real party in interest entitled to prosecute this lawsuit. ECF No. 54 ¶ 4. Plaintiff argues that by producing these exhibits it has "eras[ed] any doubt as to Plaintiff's standing to prosecute this case." ECF No. 59 at 9. For the below reasons, the exhibits do not erase all doubt as to Plaintiff's standing to bring claims pertaining to the Rim, Peachtree, Carlsbad, Westside, Prospect, or La Quinta Projects.

### a.      The Rim Project

In its FAC, Plaintiff claimed it was assigned all claims arising out of the Rim Project from five entities using variations of the name Fourth Quarter Properties (hereinafter "FQP") including: (1) FQP 140, LLC; (2) FQP 161, LP; (3) FQP 162, LP; (4) FQP LXI, LP; and (5) FQP LXV, LP. ECF No. 44 ¶ 4. In its SAC, Plaintiff claims Exhibit 1 shows that on April 28, 2017, those five entities, plus a sixth entity – FQP XLVII, LLC – assigned Plaintiff all claims pertaining to the Rim Project. ECF No. 54 ¶ 4(a). Although he is not mentioned in any of Plaintiff's pleadings, Defendants argue, and Plaintiff does not dispute, that Stanley E. Thomas wholly owned and controlled the purported assignors of claims related to the Rim Project. ECF No. 57-1 at 21. *See* ECF No. 57-1 at 10-11.

### i.      Exhibit 1

Exhibit 1 represents that on April 28, 2017, for $100, the six FQP entities referenced above generally assigned Thomas Land & Development Company, LLC all known and unknown assets, claims, and property "if any." ECF No. 54-1. Mr. Thomas signed on behalf of both the assignors and assignee. He signed as the "authorized signatory" for the six FQP assignor entities, and as the "manager" of the assignee Thomas Land &

11

Development Company.[5] *Id*. For multiple reasons, Exhibit 1 does not show Plaintiff's standing to bring claims pertaining to the Rim Project.

First, Exhibit 1 does not reference the Rim Project, or any other development project. Rather, it merely represents that a general assignment of all assets, claims, and property was made by the six FQP entities. Accordingly, Exhibit 1 does not show the six FQP entities actually possessed any rights pertaining to the Rim Project.

Second, Exhibit 1 does not show, as Plaintiff alleges, that the six FQP entities "contracted with VCC for the development" of the Rim Project, or that the FQP entities contracted with the Defendants at all.[6] As such, Exhibit 1 does not show the six FQP entities ever possessed the right to bring any kind of claim arising from any contract against these particular Defendants.[7]

---

[5] Defendants argue, and Plaintiff does not dispute, that Mr. Thomas is Plaintiff's "sole manager." ECF No. 57-1 at 7. Plaintiff does not explain how Mr. Thomas can sign as both the assignor and assignee, but Defendants do not challenge the validity of the purported assignments on this ground, and Defendants do not challenge the validity of the consideration. Plaintiff alleges the purported assignments in Exhibit 1, as well as Exhibits 2 and 3, are part of the "normal course of Plaintiff's real estate investment ventures and development projects" and "were made in accordance with these business strategies." ECF No. 54 ¶ 5. Plaintiff explains, "[t]hrough its vast real estate experience, Plaintiff's principals have learned to establish largely single-purpose entities responsible for various incremental phases of the development process, and to assign the rights, title and interest possessed by each entity once the purpose for which the entity was formed has been realized." *Id*.

[6] Plaintiff does not dispute that its assignment argument hinges on contractual privity between the assignor entities listed in the purported assignments and the named Defendants. As such, it is not clear why Plaintiff thought it "noteworthy" to point out that it has not brought a breach of contract claim against Defendants. *See* ECF No. 59 at 15 n.5. The absence of a breach of contract claim can be viewed as a tacit acknowledgement of a lack of contractual privity between Plaintiff, as an alleged assignee, and the Defendants.

[7] Plaintiff also provides no support for its allegation that Diversified was a subcontractor to the other Defendants on the Rim Project or any other project.

18cv1896-LL-AHG

Third, Exhibit 1 represents that an assignment was made to Thomas Land & Development *Company*, LLC. ECF No. 54-1 (emphasis added). Here, Plaintiff proceeds as Thomas Land & Development, LLC. Nowhere in any of Plaintiff's previous pleadings or oppositions does it refer to itself as Thomas Land & Development *Company*. Neither party addresses this discrepancy, and Plaintiff makes no attempt at showing the two entities are one-in-the-same.

Finally, in response to Defendants' factual attack, Plaintiff does not support the facts alleged in the SAC, including those regarding the Exhibits,[8] with a declaration, affidavit, or other evidence beyond the Exhibits themselves. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039-40 n.2 (9th Cir. 2003) ("Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."); *Foster v. Essex Prop. Tr., Inc.*, Case No. 5:14-cv-05531-EJD, 2015 WL 7566811, at *2 (N.D. Cal. Nov. 25, 2015) (faulting the plaintiffs for not responding to a factual attack by attaching affidavits or other evidence to their opposition brief). Based on the specific language in Exhibit 1, the Court cannot determine what has been assigned, and whether a valid assignment has been made, to ensure that the Plaintiff is the real party in interest with regard to its claims pertaining to the Rim Project.

### ii.    2012 Transfer

Defendants concede, however, that Vratsinas "actually contracted" with two of the FQP entities on the Rim Project, i.e. FQP 140 and FQP 162. ECF No. 57-1 at 10-11. Defendants nonetheless argue that in 2012, FQP 140 and FQP 162 transferred any causes

---

[8] Most notably, Plaintiff does not support, by declaration or otherwise, its allegation that the FQP entities "contracted with VCC for the development" of the Rim Project, or that Exhibit 1 "demonstrates" that it acquired all rights "pertain[ing] to *the Rim Project*." ECF No. 44 ¶ 4 (emphasis added).

of action to a different entity – Central Rim, LLC – and therefore could not have assigned their rights to Plaintiff in 2017. *Id*. at 11. In support of this argument, Defendants attach documents from 2011 and 2012 filed in the United States Bankruptcy Court for the Northern District of Georgia, including a "Report of Substantial Consummation and Request for Final Decree." ECF Nos. 57-20, 57-22. Defendants argue the filings show that FQP 140 and FQP 162, along with two other FQP entities, agreed to transfer all their assets, including all claims, to Central Rim as part of a reorganization. *Id*.

In response, Plaintiff argues, inter alia, the bankruptcy filings are not "some kind of final ruling or dispositive order" and "no evidence is provided to show that any purported Chapter 11 Plan was approved by the Court or put into effect." ECF No. 47 at 16. In its opposition, however, Plaintiff does not explicitly deny that (1) the bankruptcy court approved the plan, or (2) FQP 140 and FQP 162's assets were in fact transferred to Central Rim at some point prior to 2017. Plaintiff also does not address the fact that one of the filings, titled "Order Confirming Debtors' Joint Plan of Reorganization," suggests the reorganization was approved. *See* ECF No. 57-21 (Exhibit 16). Accordingly, the 2012 documents provide some additional support that FQP 140 and FQP 162 did not have assignable rights pertaining to the Rim Project in 2017.[9]

### b.   The Prospect Project

#### i.   Exhibit 1

Plaintiff also alleges Exhibit 1 shows that FQP XLVII, LLC assigned it all claims arising from the Prospect Project. *See* ECF No. 54 ¶ 4(e). As noted above, Plaintiff does

---

[9] Plaintiff also argues that "Defendants do not mention that other assignor entities for [the Rim Project] were not even privy to that Bankruptcy" and "[n]o evidence is presented that such other entities transferred any assets whatsoever, or were otherwise impacted by the Bankruptcy." ECF No. 59 at 15. Though true, these arguments do not remedy the lack of support, discussed above, for Plaintiff's allegation that all six of the FQP entities listed in Exhibit 1 contracted with Defendants on the Rim Project, and therefore could validly assign claims against Defendants pertaining to the project to Plaintiff in 2017.

not dispute that Mr. Thomas owned and controlled FQP XLVII. ECF No. 57-1 at 11, 21. For the same reasons stated above, the specific language in Exhibit 1 does not show that FQP XLVII  validly assigned Plaintiff claims against the Defendants pertaining to the Prospect Project.

### ii.    2015 Settlement Agreement

Additionally, Defendants argue Plaintiff released all claims regarding the Prospect Project in a 2015 settlement agreement. ECF No. 57-1 at 21. In support of this argument, Defendants attach a May 29, 2015 agreement between Vratsinas and: (1) two FQP entities (but not FQP XLVII); (2) Thomas Enterprises, Inc. (hereinafter "Thomas Enterprises"); and (3) Mr. Thomas. ECF No. 57-4 at 2 (Exhibit B). In the agreement, the FQP entities, Thomas Enterprises, and Mr. Thomas are identified as "owners." *Id*. The agreement includes a release of all claims "that have been asserted or could have been asserted by owners with respect to the . . . . the Prospect Park Project . . . . and the facts, claims and controversies more fully described in the . . . . Prospect Park Lawsuit[.]" *Id*. at 4.

In response, Plaintiff argues any release by Thomas Enterprises in the 2015 settlement agreement has no impact on the assignment because it did not involve FQP XLVII or Plaintiff. ECF No. 59 at 17. Plaintiff also argues "there is no indication at all as to what 'facts, claims and controversies' arose in the Prospect Park Lawsuit, and Defendants certainly do not attempt to explain how Plaintiff's claims against Vratsinas . . . . fall within the scope of that lawsuit, or even whether the Prospect Park Lawsuit had anything to do with the fraud perpetrated at the Prospect Project." *Id*. at 19-20. Finally, Plaintiff argues the release language states that Vratsinas was released from claims that "occurred, arose, or existed at any time through and including" May 29, 2015, *id*. at 20 (citing ECF No. 57-4 at 2), but Plaintiff alleges the fraudulent conduct occurred in January 2016 and thereafter, *see* ECF 54 ¶ 35(e).

In reply, Defendants argue (1) FQP XLVII was wholly owned and controlled by Mr. Thomas; (2) both Mr. Thomas and Thomas Enterprises are signatories to the 2015 Settlement Agreement "in their individual and corporate capacities, for both themselves

and their past or present affiliates, successors and assigns;" and (3) "[a]s previously demonstrated by Defendants, all of the [FQP] entities registered in Georgia are in fact the wholly owned and controlled alter egos of Thomas[.]" ECF No. 64 at 8-9.

Here, Plaintiff is not specifically included as a party to the 2015 settlement agreement. Additionally, while other FQP entities are listed as parties to the agreement, FQP XLVII is not. Although Plaintiff does not dispute that all the FQP entities are owned and/or controlled by Mr. Thomas, Defendants do not demonstrate that Mr. Thomas falls within the legal definition of an "alter ego" for the purpose of determining whether an agreement signed by Mr. Thomas on behalf of some FQP entities binds all other FQP entities (or, for that matter, binds Plaintiff or Thomas Enterprises) regardless of whether those other entities are specifically named in the agreement. With respect to the instant motion, the first time Defendants refer to Mr. Thomas as the "alter ego" of the FQP entities is in their reply. Finally, the language cited by the parties in the 2015 settlement agreement appears subject to some degree of interpretation, including, for example, whether the reference to "affiliates" was intended to include all other FQP entities controlled by Mr. Thomas. Accordingly, it is not clear at this stage in the litigation that FQP XLVII released all claims regarding the Prospect Project so that any subsequent assignment of those claims would be invalid. This conclusion does not, however, remedy the issues with the specific language, or lack thereof, in Exhibit 1 with respect to Plaintiff's standing to bring claims pertaining to the Prospect Project.

### c.     The Peachtree, Carlsbad, and La Quinta Projects

In its SAC, Plaintiff alleges that on August 27, 2009, FQP entities, or entities formerly known as FQP entities, assigned all claims pertaining to the Peachtree, Carlsbad, and La Quinta Projects to Thomas Enterprises. ECF No. 54 ¶ 4(b), (c), (f). Plaintiff then alleges that on April 28, 2017, Thomas Enterprises assigned those claims to Plaintiff. *Id*.

With respect to the Peachtree Project, Plaintiff alleges the initial assignment was from LA Forum Peachtree I, LLC ("LA Forum I") and LA Forum Peachtree II, LLC ("LA

Forum II").[10] *Id*. ¶ 4(b). Plaintiff alleges LA Forum I was formerly known as FQP XIX, LLC, and LA Forum II was formerly known as FQP 67, LLC. *Id*. With respect to the Carlsbad Project, Plaintiff alleges the initial assignment was from LA Forum Carlsbad, LLC. *Id*. ¶ 4(c). Plaintiff alleges LA Forum Carlsbad was formerly known as FQP XXX, LLC. *Id*. Finally, with respect to the La Quinta Project, Plaintiff alleges the initial assignment was from FQP XLIII, LLC. *Id*. ¶ 4(e). In support of these claims, Plaintiff relies on Exhibits 2 and 3 attached to the SAC.

### i.    Exhibits 2 and 3

Exhibit 2 represents that on August 26, 2009, for $100, FQP XIX and FQP 67, as well as five other FQP entities,[11] assigned all assets, claims, and property "if any" to Thomas Enterprises. ECF No. 54-2. Exhibit 3 represents that on April 28, 2017 (the same date as Exhibit 1), again for $100, Thomas Enterprises assigned all assets, claims, and property to Thomas Land & Development Company, LLC. ECF No. 54-3. For both Exhibits, Mr. Thomas signed on behalf of both the assignors and assignees. Mr. Thomas signed as the "authorized signatory" for all the FQP entities, as the "president" of Thomas Enterprises, and as the "manager" of Thomas Land & Development Company, LLC. *Id.*

For the same reasons stated above with respect to Exhibit 1, Exhibits 2 and 3 do not show Plaintiff's standing to bring claims pertaining to the Peachtree, Carlsbad, or La Quinta Projects. Exhibits 2 and 3 do not show: (1) the FQP entities or LA Forum entities

---

[10] In its FAC, Plaintiff initially alleged (1) it was assigned the Peachtree Project claims directly from LA Forum I and II, and (2) it was assigned the Carlsbad claims directly from LA Forum Carlsbad. ECF No. 44 ¶ 4. As provided above, Plaintiff now alleges those entities assigned the claims to Thomas Enterprises, which in turn assigned the claims to Plaintiff. Plaintiff offers no explanation for the lack of consistency. Plaintiff also does not explain why it did not include the La Quinta Project in either the initial Complaint or FAC.

[11] The full list of FQP assignor entities in Exhibit 2 includes: (1) FQP LXI, LP; (2) FQP XCIV, LLC; (3) FQP 94, LLC; (4) FQP XLIII, LLC; (5) FQP XIX, LLC; (6) FQP, XXX, LLC; and (7) FQP 67, LLC. ECF No. 54-2.

18cv1896-LL-AHG

possessed any rights pertaining to any development projects; (2) that those entities "contracted with VCC for the development" of the projects;[12] (3) that they possessed the right to bring claims against the VCC Defendants; or (4) that Thomas Land & Development *Company*, LLC is the same entity as Plaintiff. Plaintiff also does not support its claims with a declaration, affidavit, or other evidence besides the Exhibits.

Additionally, with respect to the Peachtree and Carlsbad Projects, Plaintiff does not show the alleged LA Forum assignor entities that were "formerly known as" FQP entities were assignees of the FQP entities' claims, or were otherwise entitled to assign the former FQP entities' claims pertaining to the projects. For example, Exhibits 2 and 3 do not show, and Plaintiff does not otherwise show, that: (1) FQP XIX and FQP 67 contracted with Defendants prior to 2009 on the Peachtree Project; (2) FQP XIX and FQP 67 legally became LA Forum I and LA Forum II prior to 2009; or (3) after the transition, LA Forum I and II maintained possession of potential claims against Defendants pertaining to the Peachtree Project. In other words, not only does Plaintiff fail to show that FQP XIX and FQP 67 contracted with Defendants on the Peachtree Project, or that FQP XXX contracted with Defendants on the Carlsbad Project, Plaintiff fails to show those FQP entities came into legal possession of the LA Forum entities' claims pertaining to either project. As such, an additional link in Plaintiff's purported chain of assignments is missing with respect to the Peachtree and Carlsbad Projects. Accordingly, it is not clear the LA Forum entities could validly assign their claims to Thomas Enterprises in 2009, so that Thomas Enterprises could, in turn, validly assign those claims to Thomas Land & Development Company, LLC in 2017. Based on the specific language in Exhibits 2 and 3, the Court cannot determine what has been assigned, and whether a valid assignment has been made, to ensure that Plaintiff is the real party in interest to prosecute its claims pertaining to the Peachtree, Carlsbad, and La Quinta Projects.

---

[12] Again, Plaintiff provides no support for its allegation that Diversified was a subcontractor to the other Defendants on the Rim Project.

1

### ii.    2015 Settlement Agreement

2
3
4
5
6
7
8
9
10

Unlike the alleged assignors of claims arising from the Prospect Project, the alleged assignor in 2017 of claims arising from the Peachtree, Carlsbad, and La Quinta Projects – Thomas Enterprises – is a party to the 2015 settlement agreement. *See* ECF No. 57-4 at 2 (Exhibit B). As such, Defendants argue Thomas Enterprises released claims concerning those projects, as well as the Westside Project, in the 2015 settlement agreement, and therefore could not have validly assigned those claims to Plaintiff in 2017. ECF No. 57-1 at 20. In support of this argument, Defendants point to language in the agreement showing that Thomas Enterprises agreed to release Vratsinas from "any and all claims" that "existed at any time through and including the Settlement Date." *Id*.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Defendants do not convincingly argue, however, the "claims" released by Thomas Enterprises in the 2015 settlement agreement included those pertaining to the Peachtree, Carlsbad, Westside, or La Quinta Projects. As acknowledged by Defendants, the released claims include those "with respect to the Ashley Park Project, the Prospect Park Project, the 2013 Amended Settlement Agreement, and the facts, claims and controversies more fully described in the Texas Lawsuit, the Ashley Park Lawsuit, and the Prospect Park Lawsuit[.]" *Id*. at 21. Instead, Defendants argue the release necessarily includes Vratsinas' conduct with the projects because "all of Vratsinas' work on these projects had either ceased or was completed by April 2009, more than six years before the 2015 Settlement Agreement was executed." *Id*. at 20-21. If true, it seems this fact would make it less likely, not more likely, that the 2015 settlement agreement was intended to cover claims pertaining to the projects. Accordingly, based on the argument and evidence provided by Defendants, it is not clear that Thomas Enterprises released all claims regarding the Peachtree, Carlsbad, La Quinta, and Westside Projects so that any subsequent assignment of those claims would be invalid. As noted above, however, this conclusion does not remedy the issues with the specific language, or lack thereof, in Exhibits 2 and 3 with respect to Plaintiff's standing to bring claims pertaining to the Peachtree, Carlsbad, La Quinta, and Westside Projects.

28

18cv1896-LL-AHG

#### d.     The Westside Project

With respect to the Westside Project, Plaintiff alleges Exhibit 3 shows that Thomas Enterprises assigned all claims pertaining to the Westside Project to Plaintiff on April 28, 2017.[13] ECF No. 54 ¶ 4(d). For the same reasons discussed above, while claims pertaining to the Westside Project do not appear to be included in the 2015 settlement agreement, Exhibit 3 does not show Plaintiff's standing to bring its claims pertaining to the Westside Project. Accordingly, based on the specific language of Exhibit 3, the Court cannot determine what has been assigned, and whether a valid assignment has been made, to ensure that Plaintiff is the real party in interest to prosecute its claims pertaining to the Westside Project.

#### e.     Other Factors

In addition to attacking the specific language, or lack thereof, in the Exhibits, Defendants also argue "the circumstances surrounding Plaintiff's recently produced assignments strongly suggests, if not flat-out demonstrates the backdating of these documents in an effort to establish Plaintiff's standing in this case." ECF No. 57-1 at 17. Defendants argue "[g]iven that these assignments were all allegedly executed prior to Plaintiff's initiation of this lawsuit, on August 26, 2009 and April 28, 2017, this delay alone calls into question the legitimacy of the assignments[.]" *Id.* In support of their argument, Defendants attach a copy of what appears to be a similar complaint filed in 2017 by Plaintiff's counsel where he attached a copy of an assignment to the initial complaint. *See* ECF No. 57-8 (Exhibit A). Defendants also point out that "the assignments [attached to the SAC] are conveniently dated to address some of the specific issues raised in Defendants' motion to dismiss Plaintiff's First Amended Complaint." ECF No. 57-1 at 8. In response,

---

[13] In its FAC, Plaintiff initially alleged that FQP XXVII, LLC was the assignor of claims pertaining to the Westside Project. ECF No. 44 ¶ 4. In its SAC, however, FQP XXVII is not listed in any of the three purported assignments. In a footnote, Plaintiff states "[i]n a prior iteration of this Complaint, Plaintiff mistakenly alleged that this project was owned by another [FQP] entity." ECF No. 54 ¶ 4 n.1.

18cv1896-LL-AHG

Plaintiff argues, inter alia, that if this case were to proceed beyond the pleading stage, "Defendants have a myriad of discovery rights available to them if they contest the authenticity of the assignments[.]" ECF No. 59 at 13.

Certainly, there are a number of factors raising questions about the veracity of the assignments Plaintiff claims are memorialized in the Exhibits, including: (1) the Exhibits were not attached to the initial Complaint or the FAC;[14] (2) the Exhibits are signed solely by Mr. Thomas on behalf of both the assignor and assignee entities, and Plaintiff does not deny Mr. Thomas owns and/or controls these entities; (3) the Exhibits are not entirely consistent with Plaintiff's previous pleadings concerning the identity of the assignor entities; (4) as discussed above, the Exhibits do not reference any particular development project, or any development project at all; and (5) Plaintiff does not support the facts contained in the Exhibits or its unverified[15] SAC with a declaration, affidavit, or other evidence, and in its opposition, Plaintiff does not explicitly deny Defendants' accusations regarding the origin of the Exhibits.

///
///
///
///

---

[14] Plaintiff concedes it would have been "more prudent" to have produced the assignments after Judge Battaglia found a lack of standing for the first time. *See* ECF No. 59 at 9. Plaintiff argues it was only after Judge Battaglia's second order finding a lack of standing that he "made it clear that in order to evaluate the validity of the assignments, their actual production should occur." *Id*. However, Plaintiff does not address Defendants' claim that Plaintiff's counsel "is no stranger to assignments, and, as demonstrated by his filings in other cases, knows to attach any existing written assignments to an initial complaint." ECF No. 57-1 at 8.

[15] A verified complaint is submitted under penalty of perjury, and may be used as an opposing affidavit so long as the allegations are based on personal knowledge. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995).

18cv1896-LL-AHG

1
2
3
4
5
6

While these factors certainly do not weigh in favor of Plaintiff's standing,[16] without more,[17] there are insufficient grounds, at this stage in the litigation, for the Court to fully accept Defendants' suggestion the Exhibits were recently created or backdated.[18] Accordingly, these factors, individually or collectively, are not determinative of the Court's decision on the instant motion. As discussed above, the specific language in the Exhibits, or lack thereof, is enough.

7

## C.   RICO Claims

8
9
10
11
12

As noted above, in its SAC, Plaintiff brings claims for violation of RICO. ECF No. 54. In Judge Battaglia's first order dismissing Plaintiff's RICO claims, he found that Rule 9(b)'s heightened pleading standard applied because "Plaintiff's first claim is based in part on Vratsinas' alleged commission of mail fraud." ECF No. 42 at 12. Judge Battaglia reasoned:

13
14
15
16
17

> Plaintiff's frequent use of "ENTITY DEFENDANTS" suggests that every named defendant was involved in nearly every alleged scheme and all collusive practices. This term prevents the Court from being able to distinguish which defendant was engaged in what wrongful conduct, more so if every named defendant was involved, it prevents the Court from understanding how they played a role.

18
19
20
21

[16] As noted by Defendants, clear evidence that Plaintiff recently created or backdated the Exhibits attached to its SAC would be "highly troubling" and could result in multiple forms of sanctions and other consequences. *See Minden Pictures, Inc. v. Pearson Educ., Inc.*, 929 F. Supp. 2d 962, 971 (N.D. Cal. 2013).

22
23
24
25
26

[17] No party requested to conduct jurisdictional discovery regarding standing or the validity of the purported assignments. *See Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). ("A district court is vested with broad discretion to permit or deny [jurisdictional] discovery."). Requests for jurisdictional discovery "should be granted where pertinent facts bearing on the question of jurisdiction are controverted . . . . or where a more satisfactory showing of the facts is necessary." *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).

27
28

[18] The Exhibits clearly represent that they were "made" and "executed" by the parties "as the date hereof." *See, e.g.*, ECF No. 54-1.

Additionally, although the facts regarding how the alleged schemes operated and could have been applied are comprehensive and provide an understandable explanation of each scheme's process, there is a lack of detail regarding how or when each scheme was applied to the named projects. Therefore, without facts detailing how each defendant, including Vratsinas, was uniquely involved in each scheme, and how and when those schemes were applied to which projects, this Court finds that Plaintiff has not adequately pled their RICO claims under 9(b)'s heightened standard.

*Id*. at 13. In his second order dismissing these claims, Judge Battaglia found that:

Thomas Land has met most, but not all, of the pleading requirements set forth in Rule 9(b). This time around, Thomas Land has sufficiently explained the role of each defendant in light of the alter ego allegations. But while the facts regarding how the alleged schemes operated is thorough and complete, there is still a lack of facts regarding how or when each scheme was applied to the named projects specified in the Complaint. Indeed, the allegations do not include any description regarding the timeline of the alleged schemes. *See Mostowfi*, 269 F. App'x at 624 ("Likewise, several predicate acts allege violations of federal criminal statutes but do not specify who committed the violation, and when and where it occurred.").

ECF No. 53 at 15.

In its SAC, Plaintiff now alleges the general beginning of the timelines of the alleged schemes. ECF No. 54 ¶ 35. Based on information and belief, Plaintiff alleges:

[The] schemes were implemented on each of the subject projects . . . . extending well after construction ceased, as Plaintiff continued to be pursued for payment of invoices and charges unlawfully generated from the Fraudulent Schemes, which conduct occurred for each such project in the following timeframes:

a. The Rim Project: March of 2016, continuing thereafter to a precise date unknown;

b. The Peachtree Project: August of 2016, continuing thereafter to a precise date unknown;

c. The Carlsbad Project: April of 2015, continuing thereafter to a precise date unknown;

23

18cv1896-LL-AHG

d. The Westside Project: August of 2014, continuing thereafter to a precise date unknown;

e. The Prospect Project: January of 2016, continuing thereafter to a precise date unknown;

f. The La Quinta Project: February of 2017, continuing thereafter to a precise date unknown.

*Id*. Defendants argue these allegations are still deficient because the dates are "more than seven to thirteen years after Vratsinas had either completed or ceased all work on the specified projects," and because "Plaintiff's alleged Fraudulent Schemes only describe purportedly wrongful conduct occurring during the life of the projects." ECF No. 64 at 13.

Based on the above, Plaintiff alleges that all Defendants implemented all of the alleged fraudulent schemes at all six projects beginning at some point between 2014 and 2017 and "continuing thereafter to a precise date unknown." *Id*. Plaintiff alleges the schemes were implemented "well after construction ceased, as Plaintiff continued to be pursued for payment of invoices and charges unlawfully generated from the Fraudulent Schemes." *Id*. This does not comport with Rule 9(b)'s heightened pleading standard or Judge Battaglia's previous order to provide facts as to "how or when each scheme was applied to the named projects specified in the Complaint." ECF No. 53 at 15. It is also seemingly in conflict with Judge Battaglia's initial order that by alleging that "every named defendant was involved in nearly every alleged scheme and all collusive practices," Plaintiff "prevents the Court from being able to distinguish which defendant was engaged in what wrongful conduct, more so if every named defendant was involved, it prevents the Court from understanding how they played a role." ECF No. 53 at 15. Accordingly, Defendants' motion to dismiss Plaintiff's RICO claims under Rule 9(b) is **GRANTED**.

### D.   Negligence Claims

Finally, in its SAC, Plaintiff brings claims for professional negligence and negligence against VCC. *Id.* In Judge Battaglia's first and second orders dismissing these claims, he found that such claims could not survive without proof of a valid assignment.

*See* ECF No. 42 at 16 ("As previously discussed, Plaintiff's contention that they are an assignee is not currently accepted, and without more facts contributing to Plaintiff's contention, or facts establishing Plaintiff's direct role within the listed projects in which Vratsinas' alleged misconduct occurs, this Court finds that it cannot determine that Plaintiff was owed a duty of care by Vratsinas to support claims of negligence and professional negligence."); ECF No. 53 at 16 ("[I]n light of the Court's finding that Thomas Land has not established a valid assignment of the claims, the FAC is still ambiguous as to Thomas Land's exact role in the specified projects. With this ambiguity, the Court cannot determine at this time whether Defendants owed a duty of care to Thomas Land to maintain its negligence and professional negligence claims.").

In its SAC, Plaintiff apparently alleges that all of the named Defendants, except for Diversified, owed a duty to Plaintiff because they were "licensed general contractors employed by Plaintiff" on each of the projects, ECF No. 54 ¶¶ 64-65, and because they were "contracting parties with Plaintiff," *id*. at ¶ 68. This is inconsistent with Plaintiff's other allegations that it was assigned its current claims from other entities, i.e. the FQP entities and Thomas Enterprises. Moreover, as discussed above, Plaintiff has not sufficiently shown it was assigned all claims against all named Defendants for each project, or that the purported assignors directly contracted with any of the named Defendants. Accordingly, and as consistent with Judge Battaglia's previous findings, Plaintiff's professional negligence and negligence claims again fail because the court cannot determine that Plaintiff owed a duty of care to any of the named Defendants with respect to any of the projects. Defendants' motion to dismiss Plaintiff's negligence claims under Rule 12(b)(6) is **GRANTED**.

## IV.   CONCLUSION

Based on the foregoing, Defendants' motion to dismiss under Rule 12(b)(1) is **GRANTED**. Defendants' motion to dismiss Plaintiff's RICO claims under Rule 9(b) is **GRANTED**. Defendants' motion to dismiss Plaintiff's negligence claims under Rule 12(b)(6) is **GRANTED**. As Judge Battaglia previously noted, this was Plaintiff's "one

additional opportunity to address the deficiencies." ECF No. 53 at 16. At this point, further attempts to amend the complaint appear futile. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) ("Leave to amend should be granted if it appears possible that the plaintiff can correct the complaint's deficiency."). Accordingly, all of Plaintiff's claims are **DISMISSED with prejudice**. The Clerk of Court is directed to close the case.

     **IT IS SO ORDERED**.

Dated: February 7, 2022

Honorable Linda Lopez
United States District Judge

18cv1896-LL-AHG